No. 6723.

J. G. E. AURICH vs. GEO. G. WOLF & LEVI. JOSEPH WOLF, INTERVENOR.

Where the lease of a store-house is taken in the *name* of one person, but is really taken, with the full knowledge, and consent of the lessor, for the exclusive use, and benefit of a third person, such third person will be deemed the real lessee.

The property of a party who, to the knowledge and with the consent of the lessor, is the real, although not the nominal lessee, can not be seized under a writ of provisional seizure issued in a suit against the nominal lessee, and directed solely against the property of the nominal lessee.

The interlocutory decree of the lower court maintaining a provisional seizure may, on the general appeal of the case on the merits, be reviewed by this court.

APPEAL from the Fourth District Court, parish of Orleans. *Houston, J.*

*Hörnor & Benedict* and *M. M. Cohen* for plaintiff and appellee.

*B. F. Jonas* and *Labatt, Aroni & Clinton* for intervenors and appellants.

*Jas. Graham, curator ad hoc,* for defendants.

The opinion of the court was delivered by

EGAN, J. The substantial facts of this case as they have impressed us are, that the defendants were merchants in good credit and doing a large business in the city of New Orleans in 1872. Joseph Wolf, a

brother of George G. Wolf, came to New Orleans a stranger and desired to lease a store-house in which to open a mercantile business. He selected No. 633 Magazine street, the property of the plaintiff, with whom he agreed upon a lease for two years and ten months from the first of December, 1872. Being, however, a stranger to Aurich, and it being necessary to give security for the payment of the lease price, $115 per month, and his brother George G. Wolf being prohibited by the terms of the articles of partnership between him and his partner from becoming surety, he agreed—his partner being at the time absent—to take the lease and sign the notes in the name of his firm, which was accordingly done, although the lease was for the benefit and use of Joseph Wolf, and not of George G. Wolf & Levi. The evidence of the notary and other witnesses sufficiently establishes that all this was done with the full knowledge and consent of the plaintiff. The notary swears that Joseph Wolf and Aurich went together to his office and had him to draw the lease; that they met there several times before they came to the final conclusion; that he "understood that Wolf rented the place for a crockery store in the course of conversation without any reference to making out the lease." That there was nothing said about its being a branch of the down-town store. That "Joseph Wolf" is the one he refers to, and that George G. Wolf was never there until he came there to sign the lease. For a time it appears that the notes were presented to and paid by George G. Wolf & Levi, and subsequently repaid to them by Joseph Wolf. After that Joseph Wolf was otherwise assisted by his brother or his brother's firm until he had fairly established himself in business. When Aurich grumbled at receiving certified checks while the banks were suspended, he was told by George G. Wolf & Levi to present the notes for payment as they fell due directly to Joseph Wolf, which he did from that time, and they were regularly paid to him by Joseph Wolf, the last payment being made on the fourth of June, 1874, of all rent or lease price then due. This was only four days before the institution of this suit. It appears that George G. Wolf & Levi failed for a large amount in the fall of 1873. That a judgment of over $100,000 was recovered against them by one of their creditors, under which their entire stock of goods was seized on the 12th of January, 1874, and sold as soon after as possible, beginning, according to the sheriff's return, on the twenty-fifth of February and ending the sale on the eleventh of March, 1874, and the writ returned only partly satisfied and no other property of the defendants being found, although as appears from the evidence, from sixty to eighty thousand dollars was still due upon the judgment after the sheriff's sale. This of course put an end to the business and firm of George G. Wolf & Levi, the former of whom shortly after left New Orleans and returned to Europe, where

he has since resided, and the latter, Levi, went into the employment of
another house in New Orleans as clerk, and so continued, as appears
from the evidence. Meanwhile, Joseph Wolf continued his business at
No. 633 Magazine street, the store leased from the plaintiff, and paid
regularly, and the plaintiff as regularly received, his monthly rent—the
last payment so made being, as before stated, on the fourth of June,
1874, only four days prior to the institution of this suit. All of these
facts were notorious, and could not have been unknown to so vigilant a
creditor as the plaintiff, who lived next door but one to the property
occupied by Joseph Wolf, not only as a store-house but also as a resi-
dence for his family. The failure of George G. Wolf & Levi, the public
sheriff's sale of all their goods, and the consequent extinguishment of
the firm, the departure for Europe of George G. Wolf and the employ-
ment of Levi as a mere clerk in another house in the city, all of which
occurred several months before, do not seem to have alarmed the plain-
tiff. Neither did the fact which seems to have been known to him that
Joseph Wolf had repeatedly done, as seems to have been his custom,
and that of other merchants, sent for sale to auction marts in the city
goods which he found accumulating upon him and not salable in the
ordinary course of business. Nor did he become alarmed at the fact
that Joseph Wolf had a month or two before shipped to Chicago for
more ready and profitable sale a quantity of goods purchased by him
at the sale of the stock of George G. Wolf & Levi and otherwise at
auction in this city, and perhaps some few goods from his store,
and had himself gone with the goods to Chicago to attend to their
sale, and had been absent from New Orleans on that account for several
weeks, during which time the rent note for the month of April fell due
and remained unpaid for several days, until the return of Joseph Wolf,
when it was immediately paid by him. On the eighth of June, however,
only four days after the payment of the note due on the first of that
month, the plaintiff Aurich filed his petition in the Fourth District Court
of Orleans against *George G. Wolf and Isidore Levi* only, and not
against Joseph Wolf, setting forth the lease to George G. Wolf & Levi
of the store and dwelling No. 633 Magazine street, and the execution of
thirty-four notes for the lease price, of which he claimed and annexed
the sixteen notes that remained unpaid, the first of which would fall
due on the first of July following, and the others in their order on the
first of each successive month thereafter; each note being for $115, with
eight per cent interest from maturity. He further claimed a lien, privi-
lege, and pledge upon the goods and other property in the two-story
brick store and dwelling 633 Magazine street, alleged the recent dissolu-
tion of the firm of the lessees and the selling out "*by the sheriff*" of "*their
large stock of goods*" in another and larger store, occupied by Joseph

Wolf as a store and dwelling, of which he claims that 633 was "*a branch* conducted by Joseph Wolf for George G. Wolf & Levi, although the name on the place was Joseph Wolf & Co." He also alleged that George G. Wolf "has departed from this city for Europo and Isidore Levi is now employed as a clerk in another establishment in this city;" all of which, as we have already seen, occurred several months before, and without any action on the part of the plaintiff or any evidence of apprehension of the loss of his rent, and now on the eighth of June he alleges and swears that he has good reason to believe that his said lessees, George G. Wolf & Isidore Levi, whom alone he sues and cites or prays to cite, and against whom alone he prays for judgment *in solido*, "will remove the furniture or property upon which he has a lien or privilege out of the premises, and that he may be thereby deprived of his lien," and that he has frequently demanded of the parties some satisfactory explanations and arrangements, but never could obtain either from them."

These are all of the allegations as to any facts relating to or acts or conduct on the part of the defendants and alleged lessees, George G. Wolf and Isidore Levi. The petition however further alleges that "*Joseph Wolf* is rapidly and extensively selling out the goods and other property in the store and dwelling leased to George G. Wolf & Levi, and that placards have been for more than a week past extensively placed on said store, announcing among other things that the goods therein will be sold at half the cost of the goods at the factory, and that at the expiration of fourteen days the balance will be sold at auction to make a clean sweep." Upon these allegations a writ of provisional seizure was sued out and goods, etc., in the house seized to the value, according to the sheriff's inventory, which does not seem to have been taken with great minuteness, of between eight and nine thousand dollars, and according to other evidence in the record to considerably more than that sum. On the sixteenth of the same month, about one week after the seizure, Joseph Wolf filed an intervention claiming to be the occupant and lessee of the store and dwelling, and that he had occupied and carried on a commercial business there since the winter of 1872–3 with the full knowledge and consent of the lessor and owner, John G. Aurich; that he leased the same from George G. Wolf & Levi, lessees of plaintiff, and that he had regularly paid the monthly rent notes; that for many months past Aurich had regularly presented them to him for payment at his said place of business, and has recognized and treated him, said Joseph, as tenant and sub-lessee of said premises; and has voluntarily and by verbal agreement reduced the monthly rent to one hundred dollars, and from that time had claimed no more, and that all the rent due up to the first of June, 1874, had been paid, and no more would

become due till the first of July. He alleges his own sole ownership of the goods and other property; that George G. Wolf & Levi were neither owners thereof nor occupants of the premises, nor ever had any interest in them; that they were worth over ten thousand dollars, *and all paid for;* that Aurich well knew the facts when he sued out the provisional seizure; that the allegations of the petition and the affidavit were false to the knowledge of Aurich; that the rent of the building was all paid, and Aurich had by law no lien or privilege on said goods and merchandise. He further alleged that he had no intention to remove the merchandise and other property out of the premises, and prayed that the provisional seizure be set aside; that his right to claim damages be reserved, etc. On the thirtieth of the same month Aurich filed his answer to this intervention, and "specially denies that said intervenor is the sub-lessee of said store and premises in question as by him represented and claimed in his petition of intervention; *but on the contrary your respondent affirms and charges* that although said lease was taken in the name of George G. Wolf & Levi as lessees of said store and premises, *that the same* was so taken at the request, with the full knowledge and for the benefit of the intervenor; *that he profited by said lease; is the real lessee* and is bound by *the terms and conditions thereof.* Further answering, he says that the goods, merchandise, etc., are not the property of intervenor, but of George G. Wolf & Levi, who fictitiously transferred them to the intervenor to defraud their creditors, and adds "and your respondent reiterates the charge *'that said lessee'* will remove the furniture, etc., on which he has a lien, and he may be thereby deprived of said lien." On the twenty-eighth of September, 1874, Aurich filed a supplemental petition, alleging that the lease was made for the benefit of Joseph Wolf, who expressly assumed all the obligations of the original lessees under the lease, and is liable as well as the said George G. Wolf & Levi for the lease price as claimed in the original petition; *"that he was not until lately informed* of said facts and of the assumption by said Joseph Wolf of said obligations, and consequently did not so charge him in his original petition, *his knowledge on the subject having been obtained since the filing thereof,"* and prays as in his original petition, and also for citation to and judgment against Joseph Wolf; also for the same amount claimed by him in his original petition, "payable in *such manner* and on such *terms and times* as the law directs in such cases, and corresponding with the dates of the maturity of the rent notes filed in the case." The answer of Joseph Wolf to this supplemental petition was simply a general denial. An attorney *ad hoc* was appointed and answered for George G. Wolf, the absent defendant, also by a general denial. Isidore Levi answered denying the indebtedness of himself or his late firm for the rent of 633 Magazine street, and also

denying that they have any interest in the goods or property therein, which he avers belongs to Joseph Wolf, to whom respondents' late firm sublet the said premises with the knowledge and consent of plaintiff, and that no rent is due said firm by said Joseph Wolf.

On the thirteenth of November, 1874, judgment was rendered in favor of the plaintiff against Isidore Levi personally for the amount of his demand, with lien and privilege upon the property provisionally seized, execution to be issued from month to month as each and every note falls due. This judgment was, however, subsequently set aside and a new trial granted. In February, 1875, the case was tried by a jury as to George G. Wolf and Joseph Wolf, and there were verdict and judgment in favor of the intervenor and defendant, dismissing plaintiff's original and supplemental petition, setting aside the provisional seizure, and reserving the intervenor's right to claim damages for the illegal seizure. The plaintiff filed an application for and obtained a new trial, alleging several grounds for the same, only one of which, as it contains a judicial admission which bears necessarily on the issues before us, it is necessary for us to notice. That admission is in these words : "That said original lease was made *exclusively for his* (the intervenor's) *benefit and advantage*, and that the same *so* inured to his advantage and benefit that *he is the lessee* of plaintiff, and to be treated and considered as such." This is not only a reiteration of the averment and allegation contained in the answer of Aurich to the intervention and his supplemental petition that Joseph Wolf was his lessee, but it goes further and distinctly contradicts the allegations and affidavit upon which the provisional seizure was sued out, by alleging that *the lease was made exclusively for and inured exclusively to the benefit and advantage of Joseph Wolf.*

Indeed, this contradiction is apparent from the answer and supplemental petition in which Joseph Wolf is alleged to be the real lessee. Aside, then, from the evidence on the subject, which we think supports the truth of these later allegations of plaintiff and shows that to the knowledge and with the assent of all the parties while the lease was taken and the notes given in the name of George G. Wolf & Levi, who thereby became bound for the lease price, their obligations were in fact those of suretyship for Joseph Wolf, the real lessee, and it is evident that the plaintiff himself so understood it. It may be said, however, that Joseph Wolf claimed to be sub-lessee, and that one judicial allegation offsets the other; or, in the language of the books, "leaves the matter at large." If this be true, then the evidence is that he was in form sub-lessee, under a written sub-lease from George G. Wolf & Levi, and that he had fully paid all the lease price due up to the date of seizure, and was not, therefore, liable to suit or seizure ; while, on the other hand, if he was the real lessee there is no affidavit or provis-

ional seizure against him or his property. The matter was not, however, left at large, for the plaintiff thought proper twice again to reiterate his judicial allegations, and, as we have seen, the last time in terms too strong to admit of further question as to the relation of the parties to each other. We think that not only the allegations of the plaintiff, but the evidence contemporaneous with the lease, and the subsequent conduct of the parties, as established by several witnesses, among whom is the plaintiff himself, show that the real relation between him and Joseph Wolf was that of landlord and tenant, lessor and lessee. We have examined with care the various bills or invoices of goods purchased by Joseph Wolf from George G. Wolf & Levi, as well as other persons, and we find nothing suspicious about them. It appears from marginal notes and memoranda that they were carefully scrutinized and often corrected and complaint made of over charges, as is not unfrequent among merchants. These facts, as well as the form of the bills and the direct and uncontradicted statements of witnesses in the record, all go to establish that Joseph Wolf was a real purchaser, and was looking after his interest as such. The fact of George G. Wolf & Levi taking out in their own name some of the policies of insurance is explained by other evidence, but is easily accounted for, as they seem to have sold largely to Joseph Wolf on a credit, and doubtless had an interest in having the stock insured. They are not shown to have ever been in possession or to have exercised any control over the business of Joseph Wolf. Their business both began and ended before his; and at the very time this suit was instituted not only had George G. Wolf & Levi failed and been sold out by the sheriff, but according to the allegations of plaintiff himself in his *original* petition, George G. Wolf had left the country and gone to Europe, and Levi had quit business on his own account and was clerking in another establishment in this city, and did not then or at any other time appear to have the slightest connection with or control over the business of Joseph Wolf, or Joseph Wolf & Co., as it seems he chose to do business under that name, although he had no partner. All the parties, George G. Wolf, Levi, and Joseph Wolf, swear positively that George G. Wolf & Levi had not at any time any interest in the business carried on at 633 Magazine street by Joseph, and the attempt by Aurich to show by his own evidence that George G. Wolf told him he wanted the store for a branch establishment of their down-town house is entitled to but little consideration in view of his own contradictory allegations and the other testimony in the record. A loose conversation with George G. Wolf to similar effect is detailed by one other witness but is not supported by the facts and circumstances of the case, and besides being, (especially under the circumstances detailed), entitled to but little credence in itself is flatly contradicted by the other party to the alleged conversation. We find nothing suspi-

cious in the fact that George G. Wolf, who was already established in business, and seems at the time to have had the means and the credit to do so, assisted his brother to procure a place of business and to establish himself. Nor is it surprising that his partner at least tacitly acquiesced in his so doing on and after his return home. Had he been in the city at the time of the lease it might possibly have been arranged otherwise; but he was not, and when he did return he made no objection to what was done.

The assistance rendered Joseph Wolf was natural and commendable and very frequent, especially between persons of that lineage standing in such relation to each other. The allegations of the plaintiff that he only recently, before filing his supplemental petition, ascertained the facts therein alleged, is not supported; but on the contrary, is contradicted by the evidence, and even by his own previous judicial admissions. He can not then claim any benefit, if such there be, from such state of facts. The view taken by the judge *a quo* in his charge to the jury, and in argument before us by plaintiff's counsel, rests upon the doctrine of estoppel, and might have had greater force if it were not evident that the plaintiff was in no manner deceived by the lease being taken in the name of George G. Wolf & Levi, by the consent of Joseph. The evidence of the notary who drew the lease and that of other witnesses, and the conduct of the parties, leave no room to doubt the plaintiff's knowledge of the facts from the beginning. We think the real lessee was Joseph Wolf, that the property provisionally seized was his, and that the plaintiff knew, or had reason to know, these facts when he sued out his provisional seizure and made his affidavit, and brought his suit against George G. Wolf & Isidore Levi, only. Nowhere in the record, either in the original or supplemental petition, is there any allegation or affidavit for provisional seizure as against Joseph Wolf or his property, and without it the seizure could not be and was not legally made and must fall. We have not overlooked the extensive posters and other acts or facts relating to him, and which it is claimed were sufficient to warrant the suing out of the writ as against Joseph Wolf, about which we are not, however, called upon to express an opinion, as no such use was made of them or action taken against him based upon them. It is, however, urged by the able and experienced counsel for the plaintiff, that we can not now go into the question of the provisional seizure, as it had already been adjudged in favor of the plaintiff upon a rule in the court below to set aside the provisional seizure, from which no appeal was or could now be taken. However plausible this may seem, it is now too well settled that the action of the court below in interlocutory matters comes before this court for review on the general appeal of the whole case, whether an appeal could have been taken

from the particular order or not. In this instance we think no appeal lay in favor of the party against whom the interlocutory order was made. Had the court dissolved the writ the plaintiff might have appealed, but not so the defendants or intervenor; and the latter may as well now invite our attention to this as to any other erroneous ruling in the court below anterior to final judgment as well as in that judgment itself. The conclusions to which we have arrived make it unnecessary to notice the several bills of exceptions reserved in the progress of the case. Had exception been taken to the prematurity of the plaintiff's demand against Joseph Wolf we would have been compelled to sustain it. We do not regard the allegation that he was sub-lessee and had fully paid his rent as such exception. Neither do we regard him as sub-lessee in fact, though he was so in name. We think, however, that it is sufficiently shown by the testimony of other witnesses, and even of the plaintiff himself, that from the time of general depression in the winter of 1873-4, when other landlords were reducing their rents, the plaintiff did agree with Joseph Wolf to reduce his rent from $115 to $100 until business revived; and that he received rent several times at the reduced rate. There is no evidence that trade did revive, but rather the contrary; and he must be held to his reduction as agreed on. It is further urged that Joseph Wolf paid one month's rent, $100, to the sheriff, which has accrued or will accrue to the benefit of plaintiff. The sheriff had in hand no writ authorizing the reception of this money, which was, therefore, no payment to the plaintiff. The amount is still the property of Joseph Wolf. It also appears that he tendered to plaintiff, through a notary, in the presence of two witnesses the sum of seven hundred and fifty dollars, and repeatedly, through his counsel, offered to pay the other rent notes as they fell due, but the plaintiff would not receive it. This continued up to the termination of the lease. It does not appear, however, that the money was deposited, and the intervenor and his counsel admit his liability for the rent, at the rate of one hundred dollars per month, with eight per cent per annum interest from the maturity of each month's rent remaining unpaid.

Under this state of facts, and considering he was not in default when sued, he is entitled to be relieved from costs, but not from interest. The only part of the case before us results from a verdict and judgment after several trials, with varying fortune, in favor of the plaintiff, Aurich, against Joseph Wolf, on the intervention and the main suit.

It is therefore ordered, adjudged, and decreed that the verdict and judgment in the court below be and they are avoided and set aside; that Joseph Wolf be decreed to be the owner of the property provisionally seized; that the provisional seizure sued out in this case be and it is dissolved, and the seizure under it released at the cost of the plaintiff,

Aurich; and that said plaintiff do have and recover from the defendant and intervenor, Joseph Wolf, the sum of sixteen hundred dollars principal debt, with eight per cent per annum interest on one hundred dollars thereof from the first day of July, 1874, and on each remaining hundred dollars as it matured according to the lease from the first of each succeeding month thereafter until and including the first day of October, 1875, for the maturity of the last installment, until paid, and that his lessor's lien and privilege be recognized on any property subject to it which may be found. It is further ordered and adjudged that all costs of both courts be paid by plaintiff, J. G. E. Aurich.